23-7202-cr (L)
*United States v. Buyer*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of March, two thousand twenty-five.

Present:

    DEBRA ANN LIVINGSTON,
        *Chief Judge*,
    DENNIS JACOBS,
    GUIDO CALABRESI,
        *Circuit Judges.*

---

UNITED STATES OF AMERICA,

    *Appellee*,

    v.                                                                                   23-7202-cr (Lead)
                                                                                     23-7745 (Con)

STEPHEN BUYER, AKA Sealed Defendant 1,

    *Defendant-Appellant*.

---

For Appellee:                    MARGARET GRAHAM, Assistant United States Attorney (Jacob R. Fiddelman, *on the brief*), *for* Matthew Podolsky, United States Attorney for the Southern District of New York, New York, NY.

For Defendant-Appellant:    DANIEL A. RUBENS (Daniel R. Alonso, Alyssa Barnard-Yanni & Elizabeth A. Bixby, *on the brief*), Orrick, Herrington & Sutcliffe LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Berman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Stephen Buyer ("Buyer") appeals from a judgment of the United States District Court for the Southern District of New York (Berman, *J.*), convicting him, after a nine-day jury trial, of two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2; and two counts of securities fraud in violation of 18 U.S.C. § 1348 and 2. The jury concluded that Buyer misappropriated material nonpublic information ("MNPI") from two of his consulting clients and then used that information for illegal insider trading. Specifically, in 2018, Buyer learned from Anthony Russo ("Russo"), an executive at T-Mobile U.S. Inc. ("T-Mobile"), that T-Mobile was planning to acquire Sprint Corp. ("Sprint"). Buyer then used this information to buy Sprint stock before the merger was publicly disclosed and sell that stock for a profit of more than $126,000 after the merger was announced. And in 2019, Buyer learned from Christopher Stansbury ("Stansbury"), an employee at Guidehouse, Inc. ("Guidehouse"), that it was planning to acquire Navigant Consulting Inc. ("Navigant"). Buyer similarly used this information to trade in Navigant stock, this time realizing over $227,000 in profits. The district court sentenced Buyer principally to 22 months' imprisonment, to be followed by three years' supervised release, and imposed forfeiture of $354,027.72. Buyer contests his convictions by challenging the district court's evidentiary rulings, venue in the Southern District of New York ("SDNY"), and the sufficiency of the evidence. We assume the parties' familiarity with the facts and procedural history of the case, which we summarize only as necessary to explain our decision to **AFFIRM**.

## I. Evidentiary Rulings

Buyer objects to the admission of a report generated using a software called Cellebrite and containing the extracted contents of Stansbury's cellphone (the "Cellebrite Report") and to the testimony of FBI digital forensic examiner Jessica Volchko ("Volchko"), who authenticated and explained the Cellebrite Report. Buyer argues that (1) the admission of the Cellebrite Report without the testimony of the analyst who created the report violated his rights under the Confrontation Clause; (2) the Cellebrite Report was insufficiently authenticated to be admitted at trial; and (3) Volchko's testimony was improperly admitted as lay witness testimony rather than expert opinion testimony.

### A. Standards of Review

We review objections to evidentiary rulings based on "[a]lleged violations of the Confrontation Clause . . . *de novo*." *United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009) (alterations in original) (quoting *United States v. Vitale*, 459 F.3d 190, 195 (2d Cir. 2006)). In general, however, "[t]his Court reviews evidentiary rulings for abuse of discretion," *United States v. Cummings*, 858 F.3d 763, 771 (2d Cir. 2017), "revers[ing] . . . only when an evidentiary ruling is manifestly erroneous or arbitrary and irrational," *United States v. Dawkins*, 999 F.3d 767, 788 (2d Cir. 2021) (internal quotations and citations omitted). But when a defendant "fails to preserve an evidentiary challenge by lodging a timely objection"—including by failing to timely object to the admission of evidence on Confrontation Clause grounds—"we review for plain error." *Cummings*, 858 F.3d at 771 (quoting *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 96 (2d Cir. 2014)); *see also United States v. Dukagjini*, 326 F.3d 45, 59–60 (2d Cir. 2003) (reviewing "the district court's admission of testimony in violation of the Confrontation Clause for plain error"). And further, we will not overturn a conviction because of an evidentiary error if we conclude that error

1  was harmless.  *United States v. Abreu*, 342 F.3d 183, 190 (2d Cir. 2003); *see also* Fed. R. Crim.
2  P. 52(a).

### B. Buyer Failed to Preserve His Confrontation Clause Objection Below

4  "To preserve an evidentiary claim on appeal, a party must 'timely object[]' *and* 'state[] the
5  specific ground, unless it [is] apparent from context.'"[1]  *United States v. Williams*, 930 F.3d 44,
6  64 (2d Cir. 2019) (alterations in original) (quoting Fed. R. Evid. 103(a)).  When a party objects
7  to the admission of evidence at trial but does not state the specific grounds, "he fail[s] to preserve
8  that claim for appeal" and we "review it only for plain error."  *See United States v. Inserra*, 34
9  F.3d 83, 90 n.1 (2d Cir. 1994).

10  "To be timely, an objection . . . must be 'made as soon as the ground of it is known, or
11  reasonably should have been known to the objector.'"  *United States v. Yu-Leung*, 51 F.3d 1116,
12  1120 (2d Cir. 1995) (quoting *Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir. 1991)).  We do
13  not "necessarily find [a]n objection" forfeited "because it might have been interposed a few ques-
14  tions earlier in the midst of a hotly-contested trial, particularly where the grounds for the objection
15  are not immediately apparent."  *United States v. Pujana-Mena*, 949 F.2d 24, 33 (2d Cir. 1991).
16  But we apply Rule 103's requirements "strictly."  *Williams*, 930 F.3d at 64 (quoting *United States*
17  *v. Hutcher*, 622 F.2d 1083, 1087 (2d Cir. 1980)).

18  Buyer objected to Volchko's testimony after she was called to the stand on the grounds
19  that (1) her testimony was expert opinion improperly offered as lay witness testimony, and that (2)

---

[1] To determine if an objection is properly preserved for de novo review on appeal, we typically look to Fed. R. Crim. P. 51.  But Rule 51(b) provides that the preservation of an objection to "[a] ruling or order that admits . . . evidence is governed by Federal Rule of Evidence 103."  Fed. R. Crim. P. 51(b). Because Buyer's Confrontation Clause objection relates to the district court's evidentiary ruling regarding the admissibility of Volchko's testimony and accompanying exhibits, we apply Fed. R. Evid. 103(a) to determine whether that objection was properly preserved for appellate review.

the government had not properly authenticated the Cellebrite Report it planned to introduce through her testimony. But Buyer did not state the Confrontation Clause as a ground for his initial objection. The district court considered and rejected Buyer's objections, allowing the government to present Volchko's testimony and the Cellebrite Report. Buyer made no further Confrontation Clause objection during the entirety of Volchko's testimony or when the district court admitted the Cellebrite Report into evidence. This goes far beyond those occasions in which we have held an objection that "might have been interposed a few questions earlier" was nevertheless preserved. *Pujana-Mena*, 949 F.2d at 33.

The district court later requested same-day simultaneous briefing for the parties to elaborate on "[t]he argument that was presented orally" at sidebar. App'x 314; *see also* App'x 340. While Buyer provided only two grounds for objection at trial, his motion to strike added another, with a single sentence explaining that "admission of the analyst's report in evidence also violates the Confrontation Clause of the Sixth Amendment," citing as support *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011). App'x 59. Because Buyer's objection on Confrontation Clause grounds was not raised "as soon as the ground of it [was] known[] or reasonably should have been known," *Yu-Leung*, 51 F.3d at 1120, and even then was only briefly referenced without "some effort at developed argumentation," *Meyer v. Seidel*, 89 F.4th 117, 129 (2d Cir. 2023) (quoting *Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001)), we conclude that this argument was not sufficiently preserved for appeal. We therefore review Buyer's Confrontation Clause arguments for plain error under Fed. R. Crim. P. 52(b).

### C. The District Court Did Not Plainly Err by Admitting the Cellebrite Report Without Testimony of the Analyst Who Prepared the Report

Under plain error review, the appellant must demonstrate "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the

1   appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public

2   reputation of judicial proceedings." *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013) (in-

3   ternal quotation marks and alterations omitted).   For an error to be "clear or obvious," the de-

4   fendant must show either that the claimed error contravenes "binding precedent from the Supreme

5   Court or this Court," *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004), or otherwise con-

6   stitutes an error "so egregious and obvious as to make the trial judge and prosecutor derelict in

7   permitting it," *United States v. Brown*, 352 F.3d 654, 664–65 (2d Cir. 2003) (quoting *United*

8   *States v. Gore*, 154 F.3d 34, 42–43 (2d Cir. 1998)).

9          Buyer asserts that the district court plainly erred by admitting the Cellebrite Report without

10  affording him the opportunity to cross-examine the analyst who prepared the report in violation of

11  the Confrontation Clause.   The Supreme Court in *Bullcoming* held that the Confrontation Clause

12  requires a criminal defendant be afforded the opportunity to cross-examine an analyst who pre-

13  pares a forensic report when that report includes the analyst's "representations[] relating to past

14  events and human actions."   564 U.S. at 660.   *Bullcoming* does not bear directly on the district

15  court's admission of the Cellebrite Report, which has material differences from the certification of

16  the defendant's blood-alcohol concentration that was at issue there.   And this Court has never

17  applied *Bullcoming* to data extractions.

18         On plain error review, we conclude that Buyer cannot show that the admission of the Cel-

19  lebrite Report without testimony of the preparing analyst was "clear or obvious."   *Nouri*, 711

20  F.3d at 138.

21         **D. Authentication**

22         Buyer next challenges the admissibility of the Cellebrite Report on the ground that it was

23  not sufficiently authenticated.   We disagree.   The Federal Rules of Evidence provide that the

24  requirement of authentication is satisfied by "evidence sufficient to support a finding that the item

is what its proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) provides many avenues for a proponent to authenticate evidence, including "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). We have explained that the threshold for authentication of evidence "is not particularly high," *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007), concluding that evidence is properly authenticated "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity," *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)). We do not require that the proponent "rule out all possibilities inconsistent with authenticity, or . . . prove beyond any doubt that the evidence is what it purports to be." *Pluta*, 176 F.3d at 49 (quoting *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994)). "Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." *Id*. (quoting *Holmquist*, 36 F.3d at 168). And authentication "merely renders [evidence] admissible, leaving the issue of [its] ultimate reliability to the jury." *United States v. Vayner*, 769 F.3d 125, 131 (2d Cir. 2014) (alterations in original) (quoting *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001)).

To authenticate the Cellebrite Report, the government offered testimony from the Guidehouse lawyer who collected Stansbury's phone to extract its contents during Guidehouse's internal investigation of insider trading related to the merger. That lawyer testified that the extraction was documented by a form that collected identifying information regarding Stansbury's cellphone, including the unique "IMEI" number assigned to that device. Volchko then testified that she had compared this form to the Cellebrite Report and, based on the matching IMEI numbers, concluded that the Cellebrite Report was an extraction of the same phone. Volchko also matched the cell phone number reflected in both documents, which the parties had stipulated was Stansbury's phone number. Finally, some of the text messages contained in the Cellebrite Report

were corroborated by trial testimony, with texts between Stansbury and Michael Copher, Buyer's business partner, to coordinate meeting for dinner on June 19, 2010 verified by Copher's trial testimony establishing that he met with Stansbury for dinner that day. This evidence provides a sufficient "rational basis from which the jury could infer" that the Cellebrite Report "was what the government claimed it was"—a printout of the contents of Stansbury's phone. *United States v. Maldonado-Rivera*, 922 F.2d 934, 957–58 (2d Cir. 1990) (permitting a document's authentication by its "distinctive characteristics"). We therefore conclude that Judge Berman did not abuse his discretion in determining the Cellebrite Report was sufficiently authenticated to be admitted at trial.[2]

### E. Expert Testimony

As his last evidentiary challenge, Buyer argues that the district court abused its discretion by admitting Volchko's testimony as lay witness testimony rather than subjecting it to the more stringent requirements for expert witness testimony. Lay opinion testimony may be admitted pursuant to Rule 701 if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. But we have also provided that a witness's "specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and

---

[2] Buyer argues that the testimony of the analyst who created the report was necessary to authenticate it. We disagree. The Federal Rules of Evidence set out a variety of ways to authenticate evidence, contradicting Buyer's assertion that there was only one permissible way for the government to do so here. *See* Fed. R. Evid. 901(b).

conclusions, and was not rooted exclusively in his expertise.'" *United States v. Johnson*, 117 F.4th 28, 52 (2d Cir. 2024) (quoting *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007)).

Some of the testimony challenged by Buyer presents a close call, straddling—or crossing—the line between lay opinion and expert testimony. But even assuming that portions of the challenged testimony were based on "scientific, technical or otherwise specialized knowledge," requiring Volchko's qualification as an expert, we conclude that any error in the admission of this testimony was harmless. We have held that "[a]n erroneous ruling on the admissibility of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *Cummings*, 858 F.3d at 774 (quoting *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009)). To find an evidentiary error harmless, we need not conclude that the testimony "could not have had any effect whatsoever." *Id.* (quoting *United States v. Rea*, 958 F.2d 1206, 1220 (2d Cir. 1992)). Rather, it is sufficient that we conclude the "testimony was unimportant in relation to everything else the jury considered on the issue in question." *Id.* (quoting *Rea*, 958 F.2d at 1220). "The principal factors for such an inquiry are 'the importance of the witness's wrongly admitted testimony' and 'the overall strength of the prosecution's case.'" *Dukagjini*, 326 F.3d at 62 (quoting *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000)).

Two pieces of evidence were admitted exclusively through Volchko's testimony: (1) the Navigant cookie on Stansbury's cellphone, which Volchko explained indicated that Stansbury visited Navigant's website prior to the public announcement of the Guidehouse–Navigant merger, and (2) the fact that Stansbury restored the contents of his cellphone soon after his June 12, 2019 conversation with Buyer.[3] This information, however, comprised only a small part of the

---

[3] Buyer also challenges Volchko's explanation of how messages sent from encrypted messaging applications can be recovered from a device as improperly admitted expert testimony. But because screenshots of the messages at issue were recovered from Buyer's iCloud, and admitted through another witness's

1    government's significant evidence that Stansbury was aware of the merger and passed that non-
2    public information to Buyer.  To begin, the Navigant cookie was not the only electronic record
3    of Stansbury searching for information on Navigant: Stansbury's Google account search history
4    also indicated that he visited Navigant's website prior to the merger's public announcement.  And
5    more significantly, the government offered evidence that Buyer himself looked up Navigant's
6    stock ticker within hours of his conversation with Stansbury, lending strong support to an inference
7    that Stansbury provided Buyer MNPI regarding the pending merger.  Combined with Buyer's
8    incriminating message to Stansbury after he was interviewed as part of Guidehouse's internal in-
9    vestigation of merger-related insider trading, and the testimony of Buyer's business partner re-
10   garding statements Stansbury made at a dinner on June 19, 2019, we conclude that the evidence
11   offered exclusively through Volchko's testimony "was unimportant in relation to everything else
12   the jury considered on the issue in question."  *Cummings*, 858 F.3d at 774 (quoting *Rea*, 958 F.2d
13   at 1220).  Accordingly, we conclude that any error in the district court's admission of Volchko's
14   testimony is harmless.

15   **II.    Venue**

16        Buyer next argues that the government failed to prove venue in SDNY was proper, violat-
17   ing his "right to be tried in the 'district wherein the crime shall have been committed.'"  *United*
18   *States v. Svoboda*, 347 F.3d 471, 482 (2d Cir. 2003) (quoting U.S. CONST. amend. VI); *see also*
19   Fed. R. Crim. P. 18.  "The government bears the burden of proving venue."  *United States v.*
20   *Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011).  But "[b]ecause venue is not an element of a crime, the
21   government need establish it only by a preponderance of the evidence."  *Id*.

---

testimony, Volchko's testimony on the issue is duplicative and need not be addressed here.

When a federal statute "does not specify how to determine where the crime was committed," we make this determination based on "the nature of the crime alleged and the location of the act or acts constituting it." *Id.* (quoting *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998)). But here, the Securities Exchange Act of 1934 provides that "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. As such, because Buyer's criminal offense is transacting in securities based on MNPI, venue is proper where the transaction occurred or "in any district in which such [an] offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *see also United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985) (holding that "where the acts constituting the crime and the nature of the crime charged implicate more than one location, the [C]onstitution does not command a single exclusive venue"). And further, this Court has specifically held that "[w]here the defendant is charged with an offense involving the trading of securities on a stock exchange located in the SDNY, venue in that district is appropriate." *United States v. Chow*, 993 F.3d 125, 143 (2d Cir. 2021). Buyer's claim of improper venue raises a question of law, which we review de novo. *Svoboda*, 347 F.3d at 482.

Here, the government offered evidence that securities trades—the criminal act at issue—consist of multiple steps, including execution, clearing, and settlement. *See Chow*, 993 F.3d at 143 (noting that venue was proper in part because the stock purchases were "executed, cleared, and recorded" in SDNY); *see also Svoboda*, 347 F.3d at 484 n.14 (approving jury instruction that venue may be based on "execution or settlement of a securities trade within this district"). The government provided support for a conclusion that these steps of Buyer's trades took place at least in part in SDNY, offering testimony that (1) part of the process of clearing Buyer's trades took place at a data center located in Purchase, New York, and that (2) Buyer's trades were "completed" only once they were written to storage on the Depository Trust and Clearing Corporation

("DTCC") server located in Manhattan.[4]  The government also offered evidence that Buyer traded on the New York Stock Exchange ("NYSE"), headquartered in SDNY, which supports venue.  *Chow*, 993 F.3d at 143; *see also Svoboda*, 347 F.3d at 484 (concluding venue was proper when defendant executed trades on New York-based securities exchanges, including the NYSE). We conclude that this evidence is sufficient to establish by a preponderance of the evidence that Buyer's fraudulent trades were "continued" or "completed" in SDNY, and affirm the district court's conclusion that SDNY was a proper venue for Buyer's criminal trial.

**III.     Sufficiency**

Finally, Buyer argues that his conviction must be reversed because the evidence was insufficient to establish that he possessed MNPI at the time of the charged trades in Sprint and Navigant stock.  We again find these arguments unavailing.  While "'[w]e review sufficiency of evidence challenges *de novo*, . . . defendants face a heavy burden,' because our framework for evaluating such challenges 'is exceedingly deferential.'"  *United States v. Ho*, 984 F.3d 191, 199 (2d Cir. 2020) (quoting *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018)).  This Court will "sustain the jury's guilty verdict if viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. (quoting *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010)).  In conducting our review of the sufficiency of the evidence, "we must view the evidence in the light most

---

[4] Testimony offered at trial described the DTCC system as "one logical mainframe" consisting of two servers, one located in SDNY and another located in the Eastern District of New York.  Trades on the NYSE are cleared and settled based on an algorithm that balances the workload between the two servers. The DTCC is unable to ascertain which server cleared a particular trade.  We need not analyze the effect of this uncertainty because we conclude that testimony offered at trial supports a finding that the trades are completed only once they are written to storage simultaneously on both servers.  Venue therefore may have been proper in both districts, rather than neither.

favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. DiMassa*, 117 F.4th 477, 487 (2d Cir. 2024) (quoting *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015)). We have further emphasized that "the task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court." *Ho*, 984 F.3d at 199 (alteration in original) (quoting *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001)). And the jury is entitled to render its verdict "based entirely on circumstantial evidence." *United States v. Goffer*, 721 F.3d 113, 124 (2d Cir. 2013) (quoting *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008)).

Buyer first contends that the government offered insufficient evidence to establish that he traded Sprint stock while in possession of MNPI regarding the pending T-Mobile–Sprint merger, specifically arguing that the government failed to establish that T-Mobile executive Russo told Buyer about the merger talks prior to Buyer placing the trades that formed the basis for his criminal charges. Buyer asserts that Russo's testimony stating Buyer was part of his "core group," paired with Russo's April 3, 2018 email that his "core group" was now aware of the merger, does not establish beyond a reasonable doubt that Buyer was aware of the merger talks by April 3. While Buyer is correct that Russo at times listed different consultants as part of this group, we defer to the jury's assessment of Russo's credibility when he testified repeatedly at trial that Buyer was part of this core group of consultants and therefore would have been made aware of T-Mobile's renewed interest in Sprint. *See United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998) (explaining that reviewing courts defer "to the jury's determination of the . . . credibility of the witnesses" when reviewing a sufficiency claim). Given this evidence, the jury's conclusion that Buyer was aware of the potential T-Mobile–Sprint merger by April 3, 2018—and thus used this MNPI when he purchased Sprint stock on April 3 and 5—is an inference based on specific facts

rather than impermissible speculation.[5]  *See United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019).

Buyer next argues that the government failed to provide sufficient evidence to establish that Buyer possessed MNPI when he placed the charged trades in Navigant stock.  Buyer contends that the evidence was insufficient to show that Stansbury—Buyer's point of contact at Guidehouse—was aware of this merger, such that he could have passed this information to Buyer.  The arguments are again, unavailing.  At trial, the government presented evidence that Guidehouse employee Alicia Harkness sent an email to Stansbury on June 12, 2019, requesting his assistance to gather certain information while referencing a pending "combination" and "synergy for RCM work."  App'x 212–13.  Stansbury connected with Buyer less than 20 minutes later, and the pair worked together to respond to Harkness's request.  Buyer argues that the email from Harkness is insufficient to permit a conclusion that Stansbury was aware of the merger discussions when working with Buyer on the evening of June 12, and thus could have passed this information on to Buyer.  Instead, he contends the jury could have only reached this conclusion through speculation and guesswork.  But accepting this argument would require we impermissibly ignore our duty to "analyze the evidence in conjunction, not in isolation."  *United States v. Avenatti*, 81 F.4th 171, 184 (2d Cir. 2023) (quoting *United States v. Raniere*, 55 F.4th 354, 364 (2d Cir. 2022)).  Evaluating the sufficiency of the "totality of the government's case," what Stansbury understood from Harkness's email "gain[s] color" from the government's additional evidence.  *Id*. (quoting *Raniere*, 55 F.4th at 364).  Buyer's argument that the reference to

---

[5] Because establishing Buyer possessed MNPI when trading in Sprint stock on April 3 and April 5 is sufficient to sustain his conviction, we need not address the evidence regarding Buyer's March 29 purchases.  *See United States v. LaSpina*, 299 F.3d 165, 181–82 (2d Cir. 2002) (permitting "flexibility" in the pleading and proof offered at trial so long as the indictment provides notice of the "core of criminality" to be proven at trial).

"synergies" and a "combination" in Harkness's email were unclear, such that a jury could not have concluded beyond a reasonable doubt that Stansbury understood Guidehouse was considering an acquisition, are unpersuasive given the government's evidence supporting that Stansbury in fact drew that conclusion. Copher, Buyer's business partner, testified that Stansbury discussed the possibility of a Guidehouse acquisition at dinner June 19—just seven days after he worked with Buyer on the information request—indicating that Stansbury read Harkness's email to mean Guidehouse was pursuing a merger in the RCM space. The conclusion that Buyer learned, or at least deduced, that Guidehouse was intending to acquire Navigant from his consulting work with Stansbury is further buttressed by evidence that Buyer searched Navigant's stock ticker the very same evening after he worked with Stansbury on the merger-related information request. *See United States v. Mylett*, 97 F.3d 663, 667–68 (2d Cir. 1996) (citing *SEC v. Materia*, 745 F.2d 197, 201 (2d Cir. 1984)) (rejecting a defendant's contention that he was not liable for illegal insider trading because he traded on knowledge of a merger "piece[d] together" from information acquired through a relationship of trust and confidence). We therefore reject Buyer's arguments regarding sufficiency and affirm his conviction.

\* \* \*

We have considered Buyer's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court